# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

THERESA D. SANCHEZ,

            **Plaintiff,**

vs.                                                   Civ. No. 01-744 JP/RLP

JO ANNE B. BARNHART,
Commissioner of Social Security,

            Defendant.

## UNITED STATES MAGISTRATE JUDGE'S
## ANALYSIS AND RECOMMENDED DISPOSITION[1]

1.       Plaintiff, Theresa D. Sanchez, was born on November 27, 1942. (Tr. 41). She obtained a

GED, took a one year secretarial course and worked as a secretary for the City of Albuquerque for

26 years. (Tr. 56,61). Plaintiff was diagnosed with cancer of the left breast in the Fall of 1998. (Tr.

148-149, 146, 143). Her medical care was received through Lovelace Medical Center[2]. A

lumpectomy and axillary node dissection was performed on October 8, 1998 (Tr. 130-137), followed

on November 9 by a simple mastectomy and insertion of a tissue expander for future reconstructive

surgery. (Tr. 112, 116). Plaintiff had four courses of chemotherapy from December 1998 through

February 1999 (Tr. 92, 87, 197, 193), followed by radiation therapy from March 22 to May 26, 1999.

(Tr. 177). At the time of her administrative hearing on October 5, 2000, she was cancer free but

---

[1]Within ten (10) days after a party is served with a copy of these proposed findings and recommendations, that party may, pursuant to 28 U.S.C. §636(b)(1), file written objections to such proposed findings and recommendations. A party must file any objections within the ten (10) day period if that party seeks appellate review of the proposed findings and recommendations. If no objections are filed, no appellate review will be allowed.

[2]Plaintiff's treating physicians at LMC were Jeanne Thomas, M.D., general surgeon (mastectomy), Michael Hopkins, M.D., cosmetic surgeon (reconstructive surgery), Robert Weiler, M.D., oncologist (chemotherapy), Amy Hickson, M.D., (family physician), and James Rich, M.D., spine clinic (chronic pain). Her radiation therapy was administered by James Lipsett, M.D., at St. Joseph Healthcare. (Tr. 172).

continued to have sequellae from her treatment.

2.    Plaintiff filed an application for Disability Insurance Benefits (DIB) on October 8, 1999, alleging disability as of August 1, 1998, due to breast cancer and depression. (Tr. 41, 56). Her claim was denied at the first and second levels of administrative review (Tr. 25-27, 35), and by an Administrative Law Judge following a hearing. (Tr.10-19). Plaintiff appealed the ALJ's decision to the Appeals Council which declined review on April 27, 2001. (Tr. 3-4) The matter before this Court is Plaintiff's Motion to Reverse and Remand for Rehearing. (Docket No. 7). For the reasons stated below, I recommend that Plaintiff's Motion be denied, and that the decision of the Commissioner denying Plaintiff's application for benefits be affirmed.

**Standard of Review**

3.    This Court reviews the Commissioner's decision to determine whether the records contain substantial evidence to support the findings, and to determine whether the correct legal standards were applied. **Castellano v. Sec'y of Health & Human Serv's**, 26 F.3d 1027, 1028 (10th Cir.1994). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " **Soliz v. Chater**, 82 F.3d 373, 375 (10th Cir.1996) (quoting **Richardson v. Perales**, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)). In reviewing the Commissioner's decision, I cannot weigh the evidence or substitute my discretion for that of the Commissioner, but I have the duty to carefully consider the entire record and make my determination on the record as a whole. **Dollar v. Bowen**, 821 F.2d 530, 532 (10th Cir.1987).

4.    The Commissioner has established a five-step sequential evaluation process to determine if a claimant is disabled. **Reyes v. Bowen**, 845 F.2d 242, 243 (10th Cir.1988). If a claimant is determined to be disabled or not disabled at any step, the evaluation process ends there. **Sorenson**

**v. Bowen**, 888 F.2d 706, 710 (10th Cir.1989).   The burden of proof is on the claimant at  steps one

through four;  the Commissioner bears the burden of proof at step five.  **Id.**

## The ALJ's Decision

5.      The ALJ found that Plaintiff had a severe impairment stemming from left breast lumpectomy

and axillary node dissection with implant which did not meet or equal a listed impairment (Tr. 13);

that her statements regarding the impact of this impairment were not entirely credible (Tr. 14-16);

that she retained the residual functional capacity ("RFC" herein) for light work; that she had  no

significant non-exertional limitations which narrowed this RFC , and could perform her past relevent

work as a secretary. (Tr. 17).

## Issues Raised

6.      Plaintiff raises the following issues:

A.      Whether the ALJ erred in disregarding the opinion of treating physician Amy Hickson,
        M.D, and whether the ALJ failed to develop the record with regard to Dr. Hickson's
        opinion;

B.      Whether the ALJ's findings regarding non-exertional impairments are contrary to the
        evidence and the law, and

C.      Whether the ALJ's findings regarding the credibility of Plaintiff and her family are
        erroneous.

## Discussion

### The ALJ did not err in disregarding the opinion of Dr. Hickson.

7.      Dr. Hickson is a family doctor who examined Plaintiff on one occasion following her cancer

diagnosis.   At that visit, on February 28, 2000, Plaintiff reported that she was walking 2 miles three

times a week and in general "feeling quite a lot better."   She denied chest pain, shortness of breath,

unusual headache, lightheadedness, weakness or fatigue.   On physical examination, Dr. Hickson

described Plaintiff as well-developed, well-nourished, alert, oriented, and in no acute distress, with no complaints of pain voiced in connection with examination of her neck, chest wall or extremities. (Tr. 157-158). Seven months later, on October 5, 2000, Dr. Hickson wrote a letter on Plaintiff's behalf, stating:

> Ms. Salas-Sanchez continues to experience pain and swelling in her left chest wall. She suffers from fatigue and anxiety. Her anxiety medication (alprazolam) causes drowsiness which makes it difficult to concentrate.
>
> At this time Theresa Salas-Sanchez is not able to perform her usual occupation of computer-typist. She is currently unable to tolerate a full-time work schedule.

(Tr. 201).

8.	The ALJ rejected Dr. Hickson's opinions, stating that her assessment of Plaintiff's ability to do work related activities was not supported by well documented treatment records or statements of the claimant regarding her daily activities and physical abilities; her opinions were not supported by citation to conclusive or reliable clinical or laboratory tests; her statements amounted to unexplained conclusions, and her opinion as to the claimant's ability to work and degree of disability was beyond her expertise (Tr. 16). The ALJ also summarized the treatment records of Plaintiff's other treating physicians (Tr. 12-13,15) and stated that none had provided objective findings indicating that Plaintiff was disabled. (Tr. 14).

9.	Plaintiff argues that the ALJ erred because he (1) failed to consider the records of other doctors from Lovelace Medical Center, which provided the support for the conclusions stated in Dr. Hickson's letter, (2) improperly discounted Dr. Hickson's opinion regarding Plaintiff's ability to think or reason and (3) should have asked Dr. Hickson for a clarification of her opinion.

10.	Dr. Hickson's letter of October 5, 2000, is brief, conclusory, totally unsupported by her own

records, and largely unsupported by the records of the other treating physicians.

11.     As to Dr. Hickson's statement that Plaintiff's anti-anxiety medication caused drowsiness making concentration difficult, there is not one scintilla of evidence in the medical record that Plaintiff suffered from this medication side effect.

12.     As to Dr. Hickson's statement that Plaintiff suffered from fatigue and anxiety, the medical record establishes that  Plaintiff developed weakness, nervousness, headache, dizziness and poor appetite in December 1998, two weeks after she started chemotherapy.  Laboratory testing indicated that she had an abnormally low number of mature white blood cells, a side effect of chemotherapy. Dr. Weiler, her oncologist, noted that she was anxious and  prescribed *Xanax* to be taken twice daily as needed.  (Tr. 95-97, 92).   Two weeks later Plaintiff told Dr. Weiler that she had regained her energy and appetite, and that *Xanax* had helped.  (Tr. 87).   Plaintiff continued to experience fatigue associated with chemotherapy. (Tr. 193).   As of May 3, 1999, she was feeling well with normal energy, and continued to take *Xanax* to relieved anxiety.  (Tr. 177).  In April 2000, Dr. Weiler noted that Plaintiff was "leading an active life," and continued to use *Xanax* once a day which she found to be "quite effective."  (Tr. 207).

13.     Dr. Hickson's statement that Plaintiff continues to experience pain is supported in the medical record.  The issue, however, is the disabling nature of that pain.

14.      Dr. Hopkins, Plaintiff's plastic surgeon, consistently noted Plaintiff's complaints of pain at the site of her mastectomy.  In December 1998, Plaintiff stated that the pain was persistent, but only bothered her at night. (Tr. 102).  In February 1999, Plaintiff complained that persistent irritating pain in her axilla prevented her from sleeping at night.  Dr. Hopkins described the pain as "mild" and

prescribed *Darvocet N-100*[3] to be taken at night. (Tr. 190). By April 1999, three weeks after breast reconstruction surgery, Dr. Hopkins stated that Plaintiff complained about the usual post-operative pain. (Tr. 180). In May 1999 Dr. Weiler noted that Plaintiff had some paresthesia in her left axilla for which she was taking *Ibuprophen* twice a day as needed. She complained of no unusual pains. (Tr. 177). In June 1999 Plaintiff was evaluated by Dr. Thomas, and voiced no specific complaints. (Tr. 171). In July 1999 Dr. Hopkins noted Plaintiff's complaints of continued minor to moderate pain in the left axilla (Tr. 170). Pain continued to be present in September 1999, primarily at night, and was controlled by *Xanax*[4] and *Tylenol ES*[5]. (Tr. 162). As of that time, Plaintiff was developing capsular contracture of her breast implant, a common occurrence following radiation therapy. (Tr. 162). In February 2000 Dr. Thomas wrote a letter on Plaintiff's behalf to the Social Security Administration, stating that she was referring Plaintiff to the Pain Clinic because of complaints of a great deal of discomfort in the left chest wall at the implant site, in the axillary area and the upper arm, and also intermittent hand swelling. (Tr. 152). In March 2000, Dr. Hopkins noted Plaintiff's persistent complaints of tightness in her left chest wall and axilla, discomfort in the axillary area and into the under side of her left arm. (Tr. 209).

15.     The following month Plaintiff was evaluated by Dr. Rice in the pain clinic. (Tr. 204-206). Plaintiff stated that her pain was constant, but worse in the morning. She described it as diffuse and aching, with skin sensitivity that exacerbated the pain, as did anxiety. On examination, Plaintiff had

---

[3]*Darvocet N-100* is a narcotic analgesic indicated for relief of mild to moderate pain. 1999 Physicians' Desk Reference, at 1567 *et seq*.

[4]*Xanax* (*Alprazolam*) is indicated for the management of anxiety disorder. *Id.* at 2516 *et seq*.

[5]*Tylenol* Extra-strength is indicated for the relief of minor aches and pains. *Id.* at 1685.

no particular sensitivity to light touch in the area of her surgical scars, but did have cutaneous hyperesthesia[6] of the left breast and axilla. Her upper extremity strength and reflexes were intact. She had myofacial tenderness of the left chest and shoulder, and mild subtle edema of the left hand. Dr. Rice recommended that Plaintiff see a Dr. Klein[7] to address her anxiety, fears and ongoing pain, begin pool therapy and exercise, continue to take *Alprazolam* and start *Amitriptyline* to address her pain. Plaintiff attended six sessions of aquatic therapy in April/May 2000. At the time of her last session she had increased range of motion, her hand numbness had resolved, there was less swelling of her hand, and her sleep had improved. She continued to complain of pain in the axilla. She was advised to continue therapy at a community pool. (Tr. 212- 216).

16.    The ALJ applied correct legal principles in rejecting the opinion of Dr. Hickson. A treating physician may offer an opinion about a claimant's condition and about the nature and severity of any impairments. **See Castellano v. Sec'y of Health & Human Serv's**, 26 F.3d at 1029. However, to be given controlling weight, the opinion must be "well supported by clinical and laboratory diagnostic techniques and [cannot be] inconsistent with other substantial evidence in the record." **Id.** Dr. Hickson's opinions do not meet this standard. Furthermore, a treating physician's opinion that her patient is disabled is not dispositive, as final responsibility for determining disability rests with the Commissioner. **See id**. This is not a situation where the ALJ was required to seek additional clarification from Dr. Hickson in order to adequately develop the record. Clarification is warranted

---

[6]Hyperesthesia is abnormal acuteness of sensitively to touch, pain or other sensory stimuli. Stedman's Medical Dictionary, (27th ed. 2000).

[7]Plaintiff testified that Dr. Kline was an acupuncturist, but that she was afraid to see him so had not followed through on this recommendation. (Tr. 232, 253). It appears from Dr. Weiler's notes that Dr. Kline is a psychologist. (Tr. 207).

when there is insufficient evidence, not when the evidence and the findings are contradictory. The evidence from Plaintiff's other treating physicians was adequate for the ALJ to evaluate Dr. Hickson's opinion and Plaintiff's medical condition. **See** 20 C.F.R. §404.1512(e).

**The ALJ did not err in assessing Plaintiff's non-exertional impairments.**

17.     Plaintiff contends that the ALJ failed to evaluate her mental ability to return to her prior occupation as a secretary, and improperly relied on her failure to seek mental health treatment as evidence of non-disability. (Docket No. 8 at 7-8).

18.     The ALJ assessed all of Plaintiff's non-exertional impairments (pain, anxiety and fatigue) and found that those impairments did not reduce her RFC below that required for her prior job as a secretary because "(c)onditions that can be reasonably regulated by medication cannot constitute a basis of disability." (Tr. 15). **See** 20 C.F.R. §404.1530 (claimant must follow prescribed treatment if it can restore ability to work); **cf**. **Pacheco v. Sullivan**, 931 F.2d 695, 697-98 (10th Cir.1991) (a medical condition that can be controlled or remedied with treatment is not disabling).

19.     The ALJ's determination that Plaintiff's nonexertional impairments did not reduce her RFC was arrived at properly and is supported by substantial evidence. To be disabling, a non-exertional impairment ". . . must be so severe, by itself or in conjunction with other impairments, as to preclude any substantial gainful employment." **Gossett v. Bowen**, 862 F.2d 802, 807 (10th Cir.1988) (quotation omitted). As noted by the ALJ:

    a.    Dr. Weiler on January 11, 1999, noted that *Alprazolam* (*Xanax*) relieved Plaintiff's anxiety considerably. (Tr. 15, referring to Tr. 197);

    b.    Dr. Hopkins on September 14, 1999, noted that Plaintiff's pain complaints were controlled with *Xanax* and extra strength *Tylenol*. (Tr. 15, referring to Tr. 162);

c.     As of February 8, 2000, Plaintiff was feeling well, and had no chest pain, weakness or fatigue. (Tr. 13, referring to Tr. 156). In that same doctor visit, Plaintiff indicated that she was walking three times a week for about two miles. (Tr. 156);

d.     Dr. Weiler on April 24, 2000, noted that use of *Alpraxolam* was quite effective in relieving Plaintiff's anxiety. (Tr. 15, referring to Tr. 207). On that date Plaintiff advised Dr. Weiler that she was leading an active life, despite pain in her left breast and axilla. (Tr. 13, referring to Tr. 207);

e.     Until August 4, 2000, the only pain medication utilized by Plaintiff was over-the-counter Tylenol.[8] (Tr. 16, referring to Tr. 83);

f.     Plaintiff performs significant household chores[9] demonstrating a "level of vigor and an ability to concentrate and interact with others which is inconsistent with (her) claim that she is unable to perform any work activity." (Tr. 15, referring to Tr. 59-61);

g.     Plaintiff's retained the ability to use her hands.[10] (Tr. 15, referring to Tr. 71-74, 33-34).

20.     The ALJ noted that Plaintiff did not follow though with Dr. Rice's recommendation that she seek the help of a support group[11]. (Tr. 15, referring to Tr. 205). He found that her failure to consult with a psychiatrist (e.g., failure to see Dr. Kline as recommended) or seek group or individual therapy was inconsistent with allegations of disabling mental impairment. (Tr. 15). The ALJ did not

---

[8]This statement by the ALJ is not entirely correct. Plaintiff did require prescription pain medication in her immediate post-surgical periods. (TR. 113, 190). Otherwise, she took over-the-counter medication, either I*buprofen* or *Tylenol ES*, until *Amitriptyline* was added. Amitriptyline was prescribed in April 2000, but Plaintiff indicated in written materials that she did not start taking it until August 2000. (Tr. 102, 177, 162, 55, 73, 205, 83).

[9]Wash dishes, dust, make beds, fold cloths, prepare simple meals, go to church, go on walks with others, exercise, read, care for roses in garden.

[10]Button clothes, pick up a pencil and coins, tie shoes, write a letter, type.

[11]Dr. Thomas, Plaintiff's surgeon, recommended that Plaintiff join a lymphedema support group, apparently in response to Plaintiff's complaints of swelling in her hand. Dr. Rice concurred in the recommendation. (Tr. 211, 205).

purport to deny plaintiff benefits on the ground she failed to follow prescribed treatment. Rather, he properly considered what attempts Plaintiff made to relieve her alleged mental impairment, anxiety, in an effort to evaluate the truth of her contention that her mental impairment was disabling. This was not error. **Qualls v. Apfel**, 206 F.3d 1368, 1371-1372 (10th Cir. 2000).

### The ALJ did not err in assessing credibility.

21.     The ALJ discussed the testimony of Plaintiff (Tr. 14-16) and her family. (Tr. 11). He found that Plaintiff's testimony was not fully credible (Tr. 14) and that the testimony of the family was not fully credible because it was based on Plaintiff's complaints to them. (Tr. 16). Plaintiff contends that the ALJ stated inadequate reasons for rejecting her credibility, and failed to provide convincing reasons for rejecting the credibility of her family.

22.     In reviewing assessments of credibility, the Court should "defer to the ALJ as trier of fact, the individual optimally positioned to observe and assess witness credibility." **Casias v. Sec'y of Health & Human Serv's**, 933 F.2d 799, 801 (10th Cir.1991). "Credibility is the province of the ALJ." **Hamilton v. Sec'y of Health & Human Serv's**, 961 F.2d 1495, 1499 (10th Cir.1992). At the same time, the ALJ must explain why specific evidence relevant to each factor supports a conclusion that a claimant's subjective complaints are not credible. **See Kepler v. Chater**, 68 F.3d 387, 391 (10th Cir.1995); **but see Qualls v. Apfel**, 206 F.3d at 1372 (**Kepler** does not require formalistic factor-by-factor recitation of evidence). "Findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." **Id.** (**quoting Huston v. Bowen**, 838 F.2d 1125, 1133 (10th Cir. 1988). (footnote omitted)). "In making a finding about the credibility of an individual's statements, the adjudicator need not totally accept or totally reject the individual's statements." **See** Social Security Ruling 96-7p, 61 Fed.Reg. at 34486.

Rather, the ALJ "may find all, only some, or none of an individual's allegations to be credible." **See id**.

23.     The ALJ outlined in detail Plaintiff's medical treatment (Tr. 12-14, 15-16), and concluded that Plaintiff's testimony was not entirely credible in light of "discrepancies between (her) assertions regarding the severity of her symptoms and limitations and information contained in the reports regarding medical signs and findings, the degree of medical treatment required and frequency of treatment and daily activities . . ." (Tr. 16; for specific factors relevant to credibility relied upon by the ALJ, see ¶ 19, supra).    The ALJ's evaluation of Plaintiff's credibility complies with the requirements of **Kepler v. Chater, supra.**    The ALJ's decision reflects that he considered the testimony of Plaintiff's family. (Tr. 11, 16).  He was not required to make  specific written findings regarding  each witness's credibility.  **Adams v. Chater**, 93 F.3d 712, 715 (10th Cir. 1996).

### Conclusion

24.     For the reasons stated above, I recommend that Plaintiff's Motion to Reverse and Remand for Rehearing be denied, and that the decision of the Commissioner denying Plaintiff's application for disability income benefits be affirmed.

RICHARD L. PUGLISI
UNITED STATES MAGISTRATE JUDGE